Good morning, Your Honors. Alan Anser is appearing on behalf of the Petitioner Tharwat Khalil-Issa. This is an immigration case that has been appealed from the Board of Immigration Appeals. The underlying claim is asylum, and the claim presented before this Court is that the Board of Immigration Appeals, in error, affirmed the decision of the immigration judge, failed to find that Mrs. Issa had established a well-founded fear of persecution through her husband, Khalil-Issa, who was considered an enemy of the state of Jordan. Coupled with that issue is the ineffective assistance of prior counsel, the first attorney who worked on this case. The Board ultimately recognized the ineffective assistance of that prior counsel and redated a decision and still affirmed the judge's conclusion that Mrs. Issa had failed to establish that well-founded fear of persecution. So the case that appears before the Court is two-pronged. It is our position that the Board should have remanded the case to the immigration judge, having already concluded that prior counsel had ineffectively represented his client. Rather than do that, and the second counsel, Mrs. Zonimer, had requested that the Board remand the case to the immigration judge for a full and The Board ignored that request and simply affirmed the judge's decision and redated that decision. And that is the case that appears before the Court today. In looking at this case, one has to bind Mrs. Issa's asylum claim to that of her spouse. And what happened with Khaled Issa, he had a separate trial. He applied for asylum and he applied for suspension of deportation. That latter release is not available to Mrs. Issa. Immigration judge denied both applications for the spouse. This is at a separate hearing before a different judge. And on appeal, the Board granted the suspension application. Mr. Issa is now a permanent resident of the United States. In fact, he becomes eligible for naturalization later this year. In the record for the petitioner is the testimony of Mr. Issa, which is backed up by former counsel's argument on appeal. That he suffered past persecution. He had been arrested, beaten, tortured, interrogated, and accused of being an enemy of the state of Jordan in the 1970s through the early 1980s. He granted asylum? He was not granted asylum. Just withholding? It was withholding of deportation? No. Two separate reliefs that he applied for before the judge. The judge denied both. One was asylum, and the other is suspension of deportation, which no longer exists in the law. So this suspension of deportation is not based on persecution. It's based on something else? It's based on length of residence in the United States and hardship to that applicant and to U.S. citizen children. Mrs. Issa is the mother of three U.S. citizen children. So on appeal, the board chose to grant the suspension. They might as well have granted the asylum, but they chose to overrule the judge, and they did grant the suspension. But Mrs. Issa is not eligible for suspension of deportation. But the record does show, counsel argues, that Mrs. Issa's spouse had suffered past persecution. That was the point of my question. The IJ and neither the BIA nor the IJ found that Mr. Issa suffered persecution. That's true. So we have no finding in favor of Mr. Issa on that point, and a finding by the IJ in Mrs. Issa's case that she didn't suffer persecution. Correct. But her claim is virtually inseparable from her spouse's claim. And the record does show that the spouse had been arrested, beaten, tortured, interrogated on four separate occasions and imprisoned for up to two months at a time, and that is in the record. The board is wrong. The immigration judge was wrong, and that's why we're here. We're asking for relief. What is the proper relief? Either the granting of the petitioner's application for asylum, or perhaps it may be the stronger case, a remand to the board with a directive that the board send the case back to the judge for a full and fair hearing, of which this petitioner was deprived, and the board has recognized that. They found that counsel number one ineffectively assisted his client in all regards, and that's why the board issued a second decision in this matter. Its first statement. It was a theory that, well, it wouldn't have made any difference at the IJ level. That is what the board concluded, but that's why we're here. We're asking. I realize you don't agree with that. We don't agree. And that is the essence of the case. If I can reserve the balance of my time to respond. You bet. Thank you. Thank you. Good morning.  I'm going to ask a question at the outset. If Mrs. Issa had never departed the country, would she benefit from her husband's suspension and deportation? I don't believe so. No, Your Honor. I'll start by just introducing myself. Kate DeAngelis for the Attorney General. I think a couple things to note up front. The case before the Court is that of Petitioner, not of her husband. Also, the issue about the remand to the immigration judge was not properly briefed to the Board of Immigration Appeals, and has therefore not been exhausted. Well, there are statements about, you know, we ask you to do this or to remand it to the immigration judge. So the brief before the immigration judge. There were four board decisions in this case. So the most recent brief, Decision Number 3, does not ask for remand of the case to the immigration judge. And that was the board decision that preceded this petition was filed off of. So that claim is not properly before this court. And I think, you know, the petitioner makes two arguments, past persecution and well-founded fear of future persecution. I think in light of Petitioner's attorney's focus on well-founded fear of future persecution, I'll start with that. The immigration judge, well, first of all, this court would have to be compelled to find that the decision was wrong. That's the standard of review here. It's a very high standard. And there are three main reasons why the agency's decision should be upheld regarding the well-founded fear. First of all, the immigration judge found that all of the arrests to Petitioner's husband occurred before they were married a long time ago. And, you know, the petitioners remained in Jordan for several years before they decided to leave. Petitioner's husband was able to travel back and forth from Jordan to different places, Saudi Arabia, to do business. He served in the Jordanian military and was honorably discharged. That just doesn't amount to persecution that would be imputed to his wife. As I mentioned, they continued to live in Jordan for several years after detention. And, you know, this court has held that this is a significant consideration. We're looking to see if there's a well-founded fear. And also, one of the major issues is that Petitioner opted to return to Jordan voluntarily. She traveled with her three children to Jordan to visit her mother. She stayed there for six months. And it just sort of defies logic that somebody who has a well-founded fear of being persecuted in a country would voluntarily travel there with her three children. It just doesn't. Well, some of what happened, some of her fear is because of what happened when she was there, she said. And it postdated her decision to return. Well, I mean, what happened to her when she was there? She arrived in Jordan at the airport. She was questioned because her passport was expired. She was held for several hours. She was moved on to what would be the equivalent of our secondary inspection. They kept her passport. There was no persecution that occurred. I mean, if it was even harassment or discrimination, there's just no evidence that the Petitioner met her burden of showing that those activities rise to the level of persecution. As the statute contemplates, as this court contemplates in its other decisions, there's just no evidence. She actually ended up being able to get a Jordanian passport. She was able to leave the country freely to come back to the United States. So she suffered no harm. She did allude to some threats, but very vague allusions, like that she was scared of what was happening at the questioning, but nothing specific. So what was her status in the United States before she left? She was a beneficiary or a derivative applicant on Mr. East's asylum application. Right before she left, she had been interviewed for the asylum application. And it was after her departure that his asylum application was denied. So she had been... Any protection there? She would have been okay in the United States while her asylum application was pending. Right. I see. Well, her application was derivative, right? At that point? At that point, yes. And once his asylum was denied, then she would lose protection? She would have an order of removal, yes. And then she would ease out suspension. She is not... She is not... She doesn't have the 10 years or something? Right. Right. So the thrust of some of my questions is we've got another... We've given benefit to the husband, and now we're kind of breaking up the family. It isn't like some aggravated felon that we're throwing out of the country. It is at this point. However... You wonder what... She needs to establish... Excuse me. Pardon? I'm sorry. I didn't mean to interrupt. No, I wonder what great goals of our immigration policy are being achieved, but... But at the same time, it's not proper to grant a form of relief to somebody who has not met the burdens that are required to prove that they warrant that form of relief, and that is the case here. So, given the standard of review, I would argue that the court should not be compelled to reverse the agency decision in this case. It was well-reasoned. And with that, I'm finished. Thank you. Thank you, Ms. Candless. Judge Arushi? If I might address some of his honors. Well, your first question, would the petitioner have been granted suspension of deportation had she remained in the United States? Yes, she would have, because she was derivative to her spouse. For suspension as well as asylum? Yes. Is that right? Yes. If you have a husband who's been here ten years and the wife has been here four, one can benefit from the other? You are right. There is no derivative in suspension. But she was in proceedings, and she could have brought her own claim. And it's the same basic claim, and it's seven years of residence. Well, except you said earlier that she's not eligible for suspension herself. And this goes back to another question I believe that you asked, Your Honor. That is, when she left the country, that the absence of the departure breaks the continuity of residence. Was she eligible for suspension before? Yes, she was. She was. She left the country not on a whim, but to visit her mother who was deathly ill. And by the way, her mother now is a lawful permanent resident of the United States, and she lives in San Diego, California. Contrary to, I believe, what oil counsel has told the court, I think you will find at page 86 of the record of proceedings that Mrs. Anheimer, that is the second attorney, ended her brief to the board with a request for the remand. So it is in the record. And that's based on the ineffective assistance of the prior counsel. Excuse me, counsel. May I ask you a question on a different subject? Yes, Your Honor. Does this case come within the holding of the Supreme Court in the Thomas case, which held that the agency has to have the first opportunity to decide whether there is a social group involved? I don't know, Your Honor. But I can answer that this court has held that a particular social group, the most fundamental social unit of that social group is family. And that is what we have here. That's how we tie the petitioner to her spouse. Well, the problem there is that we held that in a bank decision that the Supreme Court overturned, and they overturned it on the ground that that question of whether the family is a proper social unit for purpose of asylum is best addressed in the first instance by the board. So I think our law is just open now. I don't believe that the board addressed that. Do you know of any case where the board has addressed the family as a social group question that would control in this case after the Thomas case? I do not, Your Honor. I don't know of any case, such a case. I would simply close by adding, you raised the issue of family unity and breaking up the family. This court should be aware that of the three U.S. citizen children, they all suffer from grave illnesses. There's a 14-year-old daughter, Rasha, R-A-S-H-A, who has had, I believe, eight operations, brain damage. She's treated by her mother and would die without the attention of her mother. And the other children have similar illnesses. This is a very difficult case from the standpoint of breaking up the family. If there are no further questions, I finish. Thank you very much. Thank you. Ms. DeAngelis, do you think mediation would be useful in this circumstance? Thank you, Justice Gorsuch. Would you like some time to explore that? I believe that the decision below was well decided. So I don't think that there would be a reason to not uphold it. Okay, but that's not the question I asked you. Would the hardships of the equities merit looking into mediation? Yeah, they may, yes. Yes. Speaking only for myself, I wonder if maybe we shouldn't reserve submission of the case for how long would it take you? Ten days, two weeks to explore whether something can be done? Would that give you enough time to? I'd ask for at least two weeks, yes, please. I have a full docket right now. I assume you have no objection. You need more time, that's fine with me. I don't want to put you under the gun. Do you want a month? Yeah, let's go with a month, yes. Is that okay with? That's fine. That's certainly fine with me. Okay, why don't we talk about it back in our secret room and we'll give you an order. Okay, thank you. Thank you very much to both sides. We'll stand at recess for the morning.
judges: Canby, Tg Nelson, Silverman